UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | File No. 1:10-cr-139-jgm-1 |
| ORLANDO PACHECO, | : | |
| Defendant. | : | |

DECISION ON DEFENDANT'S MOTIONS FOR
JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL
(Docs. 85, 86)

Defendant Orlando Pacheco moves post trial for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) on grounds the government failed to introduce evidence he joined a conspiracy to distribute cocaine in Vermont, asserting there was no evidence he knew of, had a stake in, or could reasonably foresee, a distribution chain that extended beyond Schenectady, New York to a distributor in Vermont.

Mr. Pacheco also moves for a new trial under Federal Rule of Criminal Procedure 33, asserting three grounds. First, he claims the jury verdict was against the weight of the evidence for lack of proof he agreed to distribute cocaine in Vermont, and because cooperating witnesses were not credible. Second, he claims prejudicial variance between the Vermont conspiracy charged and proof of a more limited conspiracy at trial. Third, he claims prejudicial error in admitting a statement made after invoking his right to counsel during interrogation, certain character evidence, and telephone records postdating the charged conspiracy. For the following reasons, the motions are denied.

I.      BACKGROUND

On September 2, 2011, following a seven-day trial, a jury found Pacheco guilty of conspiring with Noel Delarosa, John Orlando Brooker, Jr., and other identified and unidentified individuals, to distribute five or more kilograms of cocaine in the District of Vermont and elsewhere, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  This Court had granted Pacheco's request to instruct the jury on multiple versus single conspiracies.

The jury heard witness testimony and considered evidence of controlled drug purchases, telephone records, results of forensic cell phone examinations, car rental records, vehicle records, real estate records, and a recorded portion of Pacheco's interview with government agents.  There was evidence that from at least the spring of 2007 until the summer of 2009, Pacheco regularly supplied quantities of cocaine, ranging from 500 grams to two kilograms, to Noel Delarosa, who lived in Schenectady, New York, and his drug couriers.  Delarosa's drug couriers met Pacheco, who lived in a mobile home in the Bronx, New York, either at the mobile home or other Bronx locations.

The jury heard testimony that Delarosa's subordinates, including Daniel Lugo, Luis Rivas, Keith Canteen, Herman Robinson, Leroy Rice, and others, transported cash from Delarosa in Schenectady to Pacheco in the Bronx, obtained cocaine from him, and then transported the cocaine back to Delarosa in Schenectady.  In Schenectady, the cocaine was cut, re-bricked, and re-packaged for further distribution.  Delarosa's subordinates then transported much of the cocaine obtained from New York, in quantities of between 500 grams to two kilograms, to John Brooker in Rutland, Vermont.  Brooker and his subordinates then distributed to lower-level dealers and users in Vermont.  Government witness Herman Robinson testified that Brooker was Delarosa's largest cocaine customer.  Robinson Test., Tr. Excerpt at 72:24-73:2 (Doc. 100).

According to testimony from Delarosa subordinate Luis Rivas, Delarosa first connected with Pacheco when Rivas, who had recently moved from the Bronx to Schenectady, located Pacheco as a new source for cocaine. Rivas Test., Tr. Excerpt at 22:18-23:2 (Doc. 98). Rivas made at least five purchases from Pacheco in the Bronx. Id. at 30:14-31:11. Rivas also testified that he made two deliveries of re-bricked cocaine from Schenectady to Rutland. Id. at 38:2-39:13. Rivas and an associate, Keith Canteen, were arrested on June 26, 2007, shortly after obtaining cocaine purchased through Pacheco, and Rivas testified the cocaine purchased that day was meant to be delivered to Vermont after being cut in Schenectady. Id. at 3:24-4:22; 62:13-19.

Herman Robinson testified that from the summer of 2007 until Christmas Eve 2009, he transported cocaine from Delarosa's suppliers in New York City and Arizona to Delarosa in Schenectady, and then from Schenectady to the Rutland, Vermont conspirators. Robinson Test., Tr. Excerpt at 19:15-16; 45:23-46:10; 48:3-11 (Doc. 100). Robinson testified that he made 50 trips to pick up between one and two kilograms of cocaine in New York City, at least half of which he obtained from Pacheco. Id. at 22:2-7. The purchase money was generally supplied by Delarosa. Id. at 22:16-18. Robinson testified he made approximately twenty trips to Vermont to deliver cocaine to Brooker and his associates, and to pick up payments for cocaine. Id. at 48:9-11. Robinson testified that Pacheco came to visit Schenectady at least three times, and he accompanied Pacheco to the New York Department of Motor Vehicles, where Pacheco changed his address of record from one in the Bronx, NY, to that of a vacant commercial building owned by Delarosa. Id. at 69:23-72:7.

Antoine Mathis also testified that he visited Pacheco three times in New York to obtain and tranport cocaine back to Delarosa's organization in Schenectady. Mathis Test., Tr. Excerpt

at 30:7-11 (Doc. 99).  On the first visit, Mathis came with Delarosa.  Id. at 32.  In the subsequent trips, Mathis delivered Delarosa's money to Pacheco in exchange for cocaine.  Id. at 35, 41.

Zachary Grant, a member of John Brooker's distribution organization in Rutland, testified that Brooker's source of supply was "A-Rod," later identified as Delarosa.  Grant was present for approximately fifteen deliveries of cocaine to Rutland from one of Delarosa's couriers.

Rivas testified that all the trips to see Pacheco were "arranged by Noel Delarosa" in telephone conversations in which Delarosa spoke directly to Pacheco.  Rivas Test., Tr. Excerpt at 33:6-17; 54:5-12 (Doc. 98).  Keith Canteen also testified that on a trip to pick up cocaine, discussions took place between Delarosa and Pacheco in Spanish to which Delarosa's subordinates were not privy.  Canteen Test., Tr. Excerpt at 37:11-21 (Doc. 96).

The government introduced telephone records showing contacts between a cell phone number Pacheco obtained from Sprint in May 2010 and numbers used by Delarosa and his wife.  Delarosa, who had been informed in January 2010 that he would be charged, was arrested on June 17, 2010.  Sprint records reflected calls between Pacheco and numbers used by Delarosa and his wife just before and just after Delarosa's arrest, which continued through the summer.

Special Agent Thomas Jusianiec of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and another ATF officer conducted two pre-arrest interviews with Pacheco at his mother's apartment.  The jury heard a portion of the first interview, which Pacheco recorded on his cell phone.  Pacheco was shown photographs and identified Delarosa as a friend he called "Junior," and various Delarosa associates as people who had come to New York City to pick up clothing for Delarosa's clothing store in Schenectady, and other individuals as people he had seen inside Junior's Schenectady store, when Pacheco had gone there for a haircut with a barber working in the store.  Pacheco admitted using Delarosa's Schenectady building address

for DMV purposes. He knew Delarosa was in jail. When Agent Jusianiec explained what was known about Pacheco's drug involvement with Delarosa, Pacheco asked, "How much will my cooperation help me with not going to jail?" At the second interview, conducted at a hotel, Pacheco identified Delarosa as "Noel" and "Junior." He provided the location of his mobile home. He also stated he wanted more time to think about telling the truth and decided he wanted to talk with an attorney. The agents then ended the interview.

II.  DISCUSSION

    A.  Motion for Acquittal: Sufficiency of the Evidence Defendant Participated in the Charged Conspiracy

Pacheco moves for judgment of acquittal because there was no evidence he joined any agreement to distribute cocaine in Vermont, as the indictment charges. He claims there is no evidence he knew of Brooker's existence in Vermont, or that Delarosa was distributing cocaine to Brooker or to any associate in Vermont. Furthermore, he argues, there is no evidence he could reasonably foresee, as a necessary and natural consequence of an agreement with Delarosa, that Delarosa would distribute cocaine to Brooker in Vermont, or that he had a stake in the success of, or mutual dependence with, any distribution in Vermont. He argues the evidence showed conspiracies that operated independently, despite some overlap among members.

Federal Rule of Criminal Procedure 29(c) provides a defendant is entitled to judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(c). If "*any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt," the jury's verdict must be sustained. Jackson v. Virginia, 443 U.S. 307, 310 (1979). A defendant challenging the sufficiency of the evidence supporting his conviction in a Rule 29(c) motion faces a "heavy burden," as a court is required to view the

evidence in the light most favorable to the government, and defer to the jury's assessment of witnesses' credibility. See United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008). In a conspiracy, "'deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court.'" United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (quoting United States v. Morgan, 385 F.3d 196, 204 (2d Cir. 2004) (ellipsis in original)). "Both the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." United States v. Stewart, 485 F.3d 666, 671 (2d Cir. 2007).

To prove a single conspiracy, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000). "[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." Id. at 114-15 (internal quotation omitted). Furthermore, "it is not necessary that the conspirators even know the identities of all the other conspirators." United States v. Eppolito, 543 F.3d 25, 47 (2d Cir. 2008). Nor need they "specifically know of one another's involvement," "as long as each defendant knew or had reason to know that others were involved in a broad narcotics conspiracy." United States v. Glover, 398 F. App'x 677, 680 (2d Cir. 2010) (internal quotations omitted).

"Where an alleged conspiracy encompasses members who neither know one another's identities . . . nor specifically know of one another's involvement, it is permissible for the jury to find that there was a single conspiracy so long as a reasonable juror could conclude beyond a

reasonable doubt (1) that the scope of the criminal enterprise proven fits the pattern of the single conspiracy alleged in the indictment, and (2) that the defendant participated in the alleged enterprise with a consciousness of its general nature and extent." Eppolito, 543 F.3d at 47-48 (quoting United States v. Rosa, 11 F.3d 315, 340 (2d Cir. 1993) (internal quotations and citations omitted)) (ellipses in original).

Here, there was sufficient evidence to permit a jury to infer Pacheco either knew or had reason to know the cocaine he provided Delarosa was destined for further distribution in Vermont. Rivas testified he drove to New York to pick up cocaine from Pacheco, and the cocaine he obtained, had he not been arrested that day, was to be delivered to Vermont. Rivas Test., Tr. Excerpt at 62:13-19 (Doc. 98). He also testified all transaction arrangements were made directly between Pacheco and Delarosa. Id. at 33:10-11; 54:5-7. A jury could reasonably infer from this evidence that Pacheco was held in closer confidence than Delarosa's couriers, and Pacheco therefore would also have known what Delarosa's couriers knew – that the cocaine was ultimately destined for Vermont. A jury could reasonably infer that, given the duration of the business relationship between Pacheco and Delarosa, the fact that the two arranged transactions directly with each other, and the evidence of their personal relationship, that Pacheco would have been aware that Delarosa's cocaine distribution chain extended to Vermont.

    B.    <u>Motion for a New Trial</u>

Federal Rule of Criminal Procedure 33 permits a district court broad discretion to grant, on a defendant's motion, "a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A court "generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility," and may only intrude upon a jury's credibility assessment "'where exceptional circumstances can be demonstrated,'" such as "where testimony is 'patently

incredible or defies physical realities.'" United States v. Ferguson, 246 F.3d 129, 133-34 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). The court must have "a real concern that an innocent person may have been convicted," and while Rule 33 discretion is broader than that permitted under Rule 29, the court must exercise its authority "sparingly." Id. at 134 (quoting Sanchez).

For the reasons discussed supra, in subsection A, the government has introduced sufficient evidence that Pacheco joined the charged conspiracy.

Pacheco has not identified what cooperating witness testimony in particular was not credible, and makes only a conclusory argument. The government responds that all cooperating witnesses' testimony was consistent. The government points out that three witnesses, Robinson, Mathis, and Delarosa's father, all stated Pacheco had visited Delarosa in Schenectady, and DMV records corroborate that Pacheco visited Schenectady. (Doc. 89 at 15.) The Court sees no basis for a new trial on this ground.

Nor was there prejudicial variance between the single conspiracy charged and what Pacheco claims was evidence of multiple conspiracies. There was sufficient evidence to permit the jury to conclude there was a single conspiracy.

Pacheco's September 8, 2010 statement to agents that he wanted more time to think about telling the truth was properly admitted. It was not made during custodial interrogation, and was made prior to expressing his wish to consult with counsel.

There was no error in permitting Luis Rivas to testify that he approached Pacheco as a potential new source of cocaine for Delarosa because it was his understanding and impression the Defendant sold cocaine. Rivas Test., Tr. Excerpt at 26:6-10 (Doc. 98). Mr. Rivas's testimony

was based on his personal knowledge, served to explain why he approached Pacheco, and did not violate Federal Rule of Evidence 404(a).

Finally, telephone records of calls between defendant's cell number and numbers used by Delarosa and his wife were properly introduced. The contacts before and after Delarosa's arrest served to demonstrate the relationship between Pacheco and Delarosa. The facts that Pacheco obtained a new number, had contacts with Delarosa's numbers, and that an alternate contact number was deleted, were evidence of concealing the conspiracy following Lugo's arrest in January 2010 and Delarosa's arrest June 17, 2010.

III. CONCLUSION

Therefore, Defendant Pacheco's Motions for Judgment of Acquittal (Doc. 85) and for a New Trial (Doc. 86) are denied.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 31st day of January, 2012.

/s/ J. Garvan Murtha
Hon. J. Garvan Murtha
United States District Judge